EAST 46TH STREET REALTY CORPORATION, Appellant, *v.* MAX GUTSCHNEIDER, Respondent.

First Department, February 21, 1919.

**Landlord and tenant — agreement by landlord to furnish live steam and belt power to tenant construed — evidence.**

Where a lease provides in one paragraph for the furnishing of live steam to a tenant and in another paragraph for the furnishing of belt power, and there is an obvious and well-understood difference between the two, the one being employed to heat water in vats and the other required for running machinery, the last sentence in the paragraph relating to belt power providing that the landlord will furnish the same upon demand after certain hours at a specified rate, does not require him to furnish live steam after hours upon the same terms.

Since the lease specifically provided for the furnishing of both live steam and belt power and fixed the hours for the service, evidence as to the nature and requirements of the tenant's business and that on numerous occasions the landlord had furnished belt power and live steam on demand at the same rate, was immaterial.

As there was no ambiguity or indefiniteness about the lease, evidence of practical construction was inadmissible.

APPEAL by the landlord, East 46th Street Realty Corporation, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county

First Department, February, 1919.          [Vol. 186.

of New York on the 15th day of May, 1918, affirming a final order in favor of the tenant in a summary proceeding brought in the Municipal Court of the City of New York.

*I. Maurice Wormser* of counsel [*Goodman Block* with him on the brief; *Milton Mayer*, attorney], for the appellant.

*Henry H. Silver*, for the respondent.

Shearn, J.:

The defense was that the landlord had violated the terms of the lease, which not only disentitled it to relief but for which violation the defendant had sustained and was entitled to recover damages by way of counterclaim. The alleged violation was the failure of the landlord to furnish the tenant after five-thirty P. M. with live steam for use in the business of the tenant to which the tenant was entitled, as he claims, under the provisions of the lease. The lease contained the following provisions governing the obligation of the landlord to furnish the tenant with live steam and with belt power:

" And the Landlord agrees to furnish the Tenant with live steam through a three-quarter (¾) inch pipe, at a pressure of sixty (60) pounds, with two outlets, for use in the business of the Tenant, it being understood and agreed that such live steam shall be furnished on week days (legal holidays excepted) from 7:30 A. M. to 5:30 P. M. except on Saturdays, when such live steam shall be furnished from 7:30 A. M. to 4:30 P. M., and except that on Saturdays during the months of June, July and August, such live steam shall be furnished until 1 P. M. only, it being agreed that any reasonable time necessary for making repairs to the steam plant shall be allowed the Landlord without any claim being made therefor by the Tenant for damages or abatement of rent.

" And the Landlord further agrees to furnish belt power from a five-inch belt from the main shafting to operate on the fifth loft three extractors and four washing machines, and, on the fourth loft, seven drums, such power to be furnished on week days (legal holidays excepted) from 7:30 A. M. to 5:30 P. M., except on Saturdays when such power shall be furnished from 7:30 A. M. to 4:30 P. M., and except that on Saturdays during the months of June, July and August such power shall

be furnished until 1 P. M. only.   It is agreed, however, that if
the Tenant shall demand power after the time hereinbefore
specified, the Landlord will furnish the same, but in no event
shall such power be furnished later than 7:30 P. M. and the
Tenant agrees to pay for such additional power at the rate of
$2.50 per hour."

It is contended by the tenant that the last sentence in the
paragraph relating to belt power required the landlord to
furnish live steam after five-thirty P. M. upon the same terms
provided for the furnishing of belt power.   In support of this
contention, the tenant claims that the two clauses should be
read together and that the last sentence should be deemed to
apply to both live steam and belt power.   I can see no justifi-
cation for this contention.   There is an obvious and well-
understood difference between live steam and belt power.
Live steam was employed to heat water in vats; belt power
was required for running machinery.   As the hours of service
provided for in both cases are the same, there is no conceivable
reason for their careful separation into two distinct para-
graphs of the agreement unless it were intended to make,
as the lease does, a different requirement in regard to furnishing
belt power than in regard to furnishing live steam.   In no
part of the lease are the terms used interchangeably, and in
each of these two paragraphs quoted there is a careful, and
obviously an intentional, differentiation between live steam
and belt power.   The court has no authority to write into
the lease an agreement to furnish live steam after hours simply
because the lease contains an agreement to furnish belt power
after hours.

The trial court received evidence concerning the nature and
requirements of the tenant's business, and evidence to show
that on numerous occasions the landlord had furnished not
only belt power but live steam on demand, and in cases where
both had been furnished merely charged two dollars and fifty
cents an hour for both.   It was contended that this afforded
a practical construction of the lease binding upon the parties.
The nature and requirements of the tenant's business could have
no bearing, when the lease specifically provided for the furnish-
ing of both live steam and belt power and fixed the hours for
the service.   Evidence of practical construction, which was

objected to, was inadmissible because there is no ambiguity or indefiniteness about the contract.

The determination should be reversed and a final order entered in favor of the landlord, with costs in all the courts.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concurred.

Determination reversed, with costs in this court and in the Appellate Term, and final order directed to be entered in favor of the landlord, with costs.